David M. Hannon
dave@employmentlaw-nw.com
**CRISPIN HANNON MARTON CAMBRELENG, LLC**
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770
Fax: 503-293-5766

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

Medford Division

| | |
|---|---|
| **LISA FARLIN**, | Civil No. 1:22-cv-1780 |
| Plaintiff, | **COMPLAINT** |
| v. | (Disability Discrimination, Failure to Accommodate, Retaliation, Constructive Discharge, Defamation) |
| **SOUTHERN OREGON CHILD AND FAMILY COUNCIL, INC.** a professional corporation, and **KATHERINE CLAYTON**, an individual. | **JURY TRIAL REQUESTED** |
| Defendant. | |

## NATURE OF THE ACTION

1. This is an action under the Americans with Disabilities Act as amended (ADAAA),

42 U.S.C. § 12111 et seq. for unlawful employment practices on the basis of disability.

2. The complaint also alleges defendant's violation of Oregon's Discrimination Against

Disabled Persons in Employment Act, ORS 659A.112, for discrimination based on disability and for failure to provide reasonable accommodation or engage in a good faith interactive process (OAR 839-006-0206(6)); defendants' whistleblower retaliation in violation of ORS 659A.199 and ORS 659A.030(1)(f); defendants' workers' compensation retaliation in violation of ORS 659A.040; defendants' denial of sick time under ORS 653.641; constructive discharge, *Nkrumah v. City of Portland*, 261 Or. App. 365 (2014); and defamation, *Slover v. Oregon State Bd. of Clinical Social Workers*, 144 Or App 565 (1996); all pursuant to the court's supplemental jurisdiction.

## JURISDICTION AND VENUE

3. This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331.

4. The court has jurisdiction over plaintiff's state law claims set forth in the complaint pursuant to its supplemental jurisdiction to hear related state law claims under 28 U.S.C. § 1367(a). Both the federal and state claims alleged herein arose from a common nucleus of operative facts, the state action is so related to the federal claim that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

5. The employment practices described herein are alleged to have been committed in the District of Oregon.

## PARTIES

6. Plaintiff **LISA FARLIN**, was a resident and citizen of the State of Oregon at the time of the subject occurrences and was employed by defendants in the State of Oregon.

7. Defendant **SOUTHERN OREGON CHILD AND FAMILY COUNCIL, INC. (SOCFC),** is a professional nonprofit corporation with the entirety of its business operations within the State of Oregon, including Jackson and Josephine Counties.

8. Defendant **KATHERINE CLAYTON**, at all material times was a supervisor and exercised control over plaintiff Farlin during the entirety of her employment.

## PROCEDURAL REQUIREMENT

9. Plaintiff timely filed an administrative complaint with the Oregon Bureau of Labor and Industries, Civil Rights Division, and with the Equal Employment Opportunity Commission, in which she alleged the statutory violations against defendant **SOCFC**, as alleged herein.

10. Plaintiff has timely satisfied all administrative prerequisites, if any, to the filing of the claims set forth in this complaint.

## BACKGROUND FACTS

12. Plaintiff Farlin began working for defendant **SOCFC** on or about August 27, 2018, where she worked as a Department Director. She was promoted to the agency's Head Start Director on or about September 1, 2019. As Head Start Director, plaintiff provided administrative oversight, including budget management and implementation of personnel policies, for **SOCFC** and Head Start, the Oregon Pre-kindergarten Program and Preschool Promise programs in compliance with Head Start performance standards and regulations. She was promoted again on or about October 1, 2020 as the 0-5 Head Start Director, providing administrative oversight over the Early Head Start program in addition to the Head Start programs. Due to harassment and retaliation from **SOCFC**, plaintiff was forced to resign on October 31, 2022.

13. Due to the Covid pandemic plaintiff began advocating for mandatory vaccinations of staff at **SOCFC** as a protection for the low-income, disadvantaged youths that make up the bulk of **SOCFC** clientele. Plaintiff's advocacy was based upon a sincerely held ethical and moral belief related to health and safety for the staff and **SOCFC** clientele.

14. In September, October and November 2020, plaintiff advocated for a safe Covid policy at work that would allow staff to work fully remote if 100% of the job could be completed in a remote capacity. **SOCFC** employee Kathy Stassi refused to entertain fully remote options and other Covid safety precautions. Plaintiff engaged in multiple conversations with defendant Katherine Clayton, Executive Director, and the entire Director team about better Covid safety protocols.

15. In November 2020, a remote work policy was implemented in response to the pandemic. However, when plaintiff went on leave in August 2021, the policy was reversed.

16. Terah Wheeler-Henrich, of the employer, began harassing plaintiff on February 16, 2021. Ms. Wheeler-Henrich belongs to a group called Maskless Women of Southern Oregon. Ms. Wheeler-Henrich made false allegations and defamatory statements about plaintiff and shared a picture from a December 2020 Teams meeting of plaintiff with **SOCFC** staff and later provided it to a local right-wing podcaster at Southern Oregon First Freedom-Focused Media. The podcaster posted a video that was over 22 minutes on August 21, 2021, titled *Southern Oregon Head Start Harassment, Marginalization, Child Safety Issues, Booze and Mismanagement*. In the video the podcaster interviews several disgruntled current and former employees. The video features a picture of plaintiff drinking soda, which Ms. Wheeler-Henrich, via the podcaster, labels an alcoholic beverage. The video was posted to YouTube

(https://www.youtube.com/watch?v=xqPtJH90rOM&t=16s). As of the date of this complaint there have been 1,981 views. Plaintiff's picture, obtained from a Teams meeting, appears at 21.44 in the video at which point the podcaster makes statements provided by Ms. Wheeler-Henrich including "Drinking on the job is a real problem at Head Start. I have a picture of the Director drinking on the job while in team meetings with other staff. She did not even get her hand spanked…. She claims she is drinking cranberry juice, but it isn't the case."

17. **SOCFC** employee Stassi forwarded the podcast video to plaintiff the same day the video posted but made no attempt to curtail Ms. Wheeler-Henrich's behavior. Ms. Wheeler-Henrich's anger over losing her position as the Assistant Head Start Director coupled with her objections to plaintiff's vaccine and mask advocacy were primary motivators for her harassing actions. Despite plaintiff's requests that **SOCFC** investigate or at least denounce the actions by Ms. Wheeler-Henrich, **SOCFC** did not take any action. **SOCFC** did not investigate or denounce the harassing material or behavior and as a result of **SOCFC**'s inaction the harassing behavior escalated and spread among **SOCFC** employees.

18. In March 2021, Ms. Wheeler-Henrich began spreading rumors that plaintiff was a Buddhist and was attempting to push her Buddhist beliefs on staff. This is false. Despite the ongoing harassment, **SOCFC** again refused to investigate Ms. Wheeler-Henrich's behavior and made no attempt to stop the rumors such that the rumors and harassing behavior toward plaintiff escalated.

19. **SOCFC** deliberately failed to address the harassment and defaming behavior. They declined to investigate or denounce the behavior or posted picture. Their actions were clearly directed at getting plaintiff to quit her job as a retaliatory response to her advocacy for a vaccine

mandate (a protected work activity related to health and safety).

20. Defendant Clayton and **SOCFC** employee Stassi, acted in a retaliatory fashion by allowing plaintiff's co-workers to retaliate against her for opposing safety hazards presented by unvaccinated staff. Defendant Clayton and **SOCFC** employee Stassi took no action to protect plaintiff from defamatory accusations made by current and former employees of **SOCFC**, specifically making false and defaming statements that plaintiff was drinking alcohol on the job. Defendant Clayton and **SOCFC** employee Stassi did not share plaintiff's beliefs regarding Covid safety precautions and attempted to push plaintiff to the point where she would quit.

21. **SOCFC**'s actions summarized in this complaint are only one example of a pattern of discriminatory behavior toward **SOCFC** employees. While employed at **SOCFC** plaintiff reported instances of discriminatory actions and behavior pertaining to age, religion, and gender that plaintiff observed.

22. Plaintiff Farlin has Post Traumatic Stress Disorder (PTSD) due to work related trauma, as diagnosed by plaintiff's mental health provider in December 2021. She also has Major Depressive Disorder. Initially plaintiff was diagnosed with an Anxiety Disorder by her primary care physician in August 2021. Her disabling condition(s) arose from ongoing, unaddressed harassment in the work environment plaintiff observed, as well as, was subjected to, in addition to the retaliation she experienced after advocating for mandatory vaccinations of staff at **SOCFC**. These disabilities affect one or more major life activities. **SOCFC** was aware of these disabilities.

23. On or around August 3, 2021, plaintiff went on medical leave as a result of her diagnosed work-related conditions. Thereafter, plaintiff was forced to interact with **SOCFC**

employee Stassi in order to submit FMLA paperwork. Between August 2021 and August 2022, Stassi exhibited difficult or harassing behavior toward plaintiff during their interactions by demanding incorrect or additional unnecessary paperwork and demanding details related to plaintiff's diagnosed condition, in violation of plaintiff's HIPPA rights. Stassi was deliberately hostile to plaintiff during this difficult time.

24.  On August 23, 2021, plaintiff filed a workers' compensation claim. On or around October 14, 2021, plaintiff's workers' compensation claim was denied, despite evidence to the contrary. The compensability denial is currently under appeal.

25.  On June 22, 2022, **SOCFC** employee Stassi went so far as to request a third set of ADA paperwork stating "SOCFC is unaware of Lisa's diagnosis…". This statement is clearly false as **SOCFC** was in possession of two prior sets of ADA paperwork and had access to plaintiff's workers' compensation file documenting the same condition. Stassi harassed plaintiff with a multitude of retaliatory actions due to her use of FMLA and workers' compensation, as well as her stance on health and safety protocols plaintiff promoted during the Covid pandemic.

26.  On July 15, 2022, **SOCFC** employee Stassi requested more details about plaintiff's condition. Plaintiff's mental health provider informed defendant Stassi that he was as specific as he could be without violating HIPPA.  Given plaintiff's current and prior negative experiences with Stassi related to older employees and/or accommodating those with disabilities, her medical provider advised plaintiff to obtain a new point of contact at **SOCFC** as Stassi had a traumatizing effect. Stassi declined to change plaintiff's point of contact stating that EEOC does not require a change of supervisor as an accommodation (Stassi was not plaintiff's supervisor at any time).

27. In August 2022, plaintiff finally received a new point of contact, Defendant Clayton, who was her supervisor. Plaintiff remained off work due to her diagnosed work-related conditions during this period.

28. On or around September 29, 2021, **SOCFC** employee Stassi denied plaintiff the use of her accrued Oregon Sick Time Leave (OSTL) pay.

29. On October 31, 2022, plaintiff sent a letter of resignation to **SOCFC**. Plaintiff had no choice but to resign due to **SOCFC**'s toxic work environment and harassing behavior.

## DAMAGES

30. As a result of the unlawful actions alleged herein, plaintiff has and will continue to suffer economic damages. Plaintiff is entitled to recover from defendant such lost wages and benefits of employment and other economic losses in such amount as may be established at trial.

31. Reinstatement is not feasible, and plaintiff is entitled to recover an appropriate amount in lost future wages and lost earning capacity in an amount to be determined at trial.

32. As a further result of defendant's actions alleged herein, plaintiff has suffered both emotional and physical damages and is entitled to recover noneconomic damages, including physical, emotional, and mental harm for which she should be compensated in an amount found to be appropriate by a jury based on the evidence presented at trial. Those injuries include anxiety, anger, fear, disappointment, embarrassment, humiliation, mistrust, depression, loss of motivation, loss of the ability to concentrate, headaches, pain from physical manifestations of the emotional distress caused by the circumstances described above, side effects from the medication needed to treat the conditions and the long-term effects of PTSD. Plaintiff has sought medical treatment for these injuries and is also entitled to recover the cost of such medical treatment.

33. Plaintiff is entitled to a declaration that defendant acted in violation of the statutes set forth in this complaint for relief and equitable relief enjoining defendant from future violations of the statutes set forth herein, and such other relief on such terms as the court may direct.

34. Defendants acted intentionally with an improper, discriminatory, and abusive motive and with malice. The acts as described herein were done intentionally with a discriminatory motive and with malice or ill will or with knowledge that its actions violated state or federal law or with reckless disregard or callous indifference to the risk that its actions violated state law. Defendants acted as alleged herein in intentional and/or in reckless disregard of defendant's societal obligations, and committed with conscious indifference to the health, safety, and welfare of plaintiff. Defendant should be assessed punitive damages in an amount found sufficient by a jury to punish defendant and to deter defendant and others from similar conduct in the future.

35. Plaintiff is entitled to recover her reasonable attorney's fees, reasonable expert witness fees, and other costs of the action to be paid by the defendant pursuant to one or more of the following: 29 U.S.C. § 2617, 42 U.S.C. §1988, ORS 659A.885, ORS 20.107.

## FIRST CLAIM FOR RELIEF

**(Disability Discrimination)**

**Count One: Disability Discrimination – 42 U.S.C. § 12112 Against Both Defendants**

36. Plaintiff incorporates paragraphs 1 through 35 as though fully set forth herein.

37. It is the purpose of the Americans with Disabilities Act to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.

38. At material times, plaintiff suffered from one or more physical and mental impairments,

which substantially affect one or more major life activities, including but not limited to standing, performing manual tasks, walking, balance maintenance, and/or working. Plaintiff's impairments substantially affect one or more major bodily functions.

39. Plaintiff was a qualified individual with a disability in that she was able to perform the essential functions of her position with reasonable accommodation or without such accommodation.

40. Plaintiff at material times was a qualified individual with a disability due to a record of impairment.

41. Defendants regarded plaintiff as a disabled person in that they acted against her based on her impairment or on an impairment defendants believed plaintiff possessed. Defendants' conduct as described herein is in violation of 42 U.S.C. § 12112.

**Count Two: Disability Discrimination – ORS 659A.112 Against Both Defendants**

42. Plaintiff incorporates paragraphs 1 through 35 and 36 through 41 as though fully set forth herein.

43. It is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment on the basis of disability.

44. Defendants facilitated the commission of the unlawful employment practices alleged herein, promoted the accomplishment thereof, advanced or brought them about, or encouraged, counseled or incited as to their commission and are therefore individually liable under plaintiff's state statutory claims for relief as an aider and abettor pursuant to ORS 659A.030(1)(g).

45. Defendants' conduct as described herein is in violation of ORS 659A.112.

**Count Three: Failure to Accommodate – 42 U.S.C. § 12112(5)(a) Against Both Defendants**

46.  Plaintiff incorporates paragraphs 1 through 35, 36 through 41, and 42 through 45 as though fully set forth herein.

47.  It is an unlawful employment practice for an employer to not make reasonable accommodation to the known physical or mental limitations of a qualified individual with a disability.

48.  Plaintiff requested reasonable accommodation for the effects of her impairments and actual disabilities.

49.  Defendant failed and refused to engage in a good faith interactive process with plaintiff to determine what accommodations were appropriate under plaintiff's circumstances.

50.  Reasonable accommodations were available that would have permitted plaintiff to perform the essential functions of her position with such accommodations.

51.  Defendant's failure and refusal to provide reasonable accommodations as required by plaintiff and its failure and refusal to enter into an interactive process in response to her requests for accommodation were in violation of 42 U.S.C. §12112(5)(a).

**Count Four: Failure to Accommodate – ORS 659A.112, .118 Against Both Defendants**

52.  Plaintiff incorporates paragraphs 1 through 35, 36 through 41, 42 through 45, and 46 through 51 as though fully set forth herein.

53.  Defendants' failure and refusal to provide reasonable accommodations as required by plaintiff were in violation of ORS 659A.112 and ORS 659A.118.51. Defendant's failure and refusal to enter into an interactive process were in violation of ORS 659A.112, ORS 659A.118, and OAR 839-006-0206(2)-(4).

## SECOND CLAIM FOR RELIEF

### Against All Defendants (Retaliation)

### Count One: Whistleblowing Discrimination – ORS 659A.199

54. Plaintiff incorporates paragraphs 1 through 35, 36 through 41, 42 through 45, 46 through 51, and 52 through 53 as though fully set forth herein.

55. It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of state or federal law, rule or regulation.

56. Plaintiff's complaints, opposition, and resistance to defendants' violations of law as alleged herein were complaints that plaintiff believed constituted evidence of a violation of a state or federal law, rule or regulation.

57. Defendants retaliated against plaintiff due to such complaints in violation of ORS 659A.199.

58. Defendant Clayton is an individual pursuant to ORS 659A.001(9)(a) and is liable as an individual who retaliated against plaintiff pursuant to ORS 659A.030(1)(f).

59. The statutory remedies provided by ORS 659A.199 are not exclusive of other statutory or common law remedies for the conduct alleged herein.

### Count Two: Retaliation – ORS 659A.030(1)(f)

60. Plaintiff incorporates paragraphs 1 through 35, 36 through 41, 42 through 45, 46 through 51, 52 through 53, and 54 through 59 as though fully set forth herein.

61. It is an unlawful employment practice for any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under ORS chapter 659A or has attempted to do so.

62. Plaintiff's complaints, opposition, and resistance to defendants' violations of law as alleged herein were substantial motivating factors in the defendants' retaliation and harassment of ORS 659A.030(1)(f).

### Count Three: Workers' Compensation Retaliation – ORS 659A.040

63. Plaintiff incorporates paragraphs 1 through 35, 36 through 41, 42 through 45, 46 through 51, 52 through 53, 54 through 59, and 60 through 62 as though fully set forth herein.

64. It is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term of condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS chapter 656 or has given testimony under the provisions of those laws.

65. Plaintiff's use of FMLA and the workers' compensation system were substantial motivating factors in the defendants' retaliation under ORS 659A.040.

### THIRD CLAIM FOR RELIEF

### Against Defendant SOCFC (Sick Time Denial)

### Count One: Sick Time Denial – ORS 653.641

66. Plaintiff incorporates paragraphs 1 through 35, 36 through 41, 42 through 45, 46 through 51, 52 through 53, 54 through 59, 60 through 62, and 63 through 65 as though fully set forth herein.

67. It is an unlawful practice for an employer or any other person to deny, interfere with, restrain or fail to pay for sick time to which an employee is entitled under ORS 653.601 to 653.661.

68. Defendant's denial of sick time is in clear violation of ORS 653.641.

## FOURTH CLAIM FOR RELIEF

### Against Both Defendants (Constructive Discharge)

### Count One: Constructive Discharge

69. Plaintiff incorporates paragraphs 1 through 35, 36 through 41, 42 through 45, 46 through 51, 52 through 53, 54 through 59, 60 through 62, 63 through 65, and 66 through 68 as though fully set forth herein.

70. A claim for constructive discharge occurs when the working conditions became so untenable that they were forced to resign from employment. *Nkrumah v. City of Portland*, 261 Or. App. 365, 372–73, 323 P.3d 453, 457 (2014).

71. By intentionally creating conditions that force plaintiff, a targeted employee, to leave as a result of those conditions, defendants are liable for the constructive discharge of plaintiff. *See Hernandez-Nolt v. Washington Cty.*, 283 Or. App. 633, 640–41, 391 P.3d 923, 927–28 (2017) citing *McGanty v. Staudenraus*, 321 Or. 532, 557, 901 P.2d 841 (1995).

## FIFTH CLAIM FOR RELIEF

### Against Both Defendants (Defamation)

### Count One: Defamation

72. Plaintiff incorporates paragraphs 1 through 35, 36 through 41, 42 through 45, 46 through 51, 52 through 53, 54 through 59, 60 through 62, 63 through 65, 66 through 68, and 69 through 71 as though fully set forth herein.

73. It is unlawful for someone to communicate a false statement about one person to another person causing damage to reputation.

74. Defendants failure to investigate, discipline or denounce the false statements made by an employee beginning in February 2021 within **SOCFC** and later given to a podcaster where the false statements were then disseminated to close to 2,000 people supports a clear case of Defamation.

### Count Two: Libel

75. Plaintiff incorporates paragraphs 1 through 35, 36 through 41, 42 through 45, 46 through 51, 52 through 53, 54 through 59, 60 through 62, 63 through 65, 66 through 68, 69 through 71, and 72 through 73 as though fully set forth herein.

76. It is unlawful for someone to make a statement by writing or picture communicate a false statement about one person to another person causing damage to reputation.

77. Defendants failure to investigate, discipline or denounce the picture provided by an employee beginning in February 2021 within **SOCFC** and later to a podcaster where the picture was used to spread false statements about plaintiff is a clear case of libel.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff requests the court to:

1. Assume jurisdiction over each of the causes set forth herein.

2. Declare defendants in violation of the statutory claims stated in plaintiff's Claims for Relief.

3. Grant such injunctive relief as may be appropriate on each of plaintiff's claims for relief.

4. Award plaintiff compensation for her economic damages, lost earning capacity, and lost future earnings and benefits of employment as appropriate.

5. Order defendants to make plaintiff whole by providing compensation for personal, noneconomic damages, including physical and emotional pain and suffering, mental anguish, humiliation, and embarrassment, and loss of enjoyment of life in amounts as are determined at trial.

6. Assess against defendants such amounts of punitive damages as are determined by a jury to punish defendants and to deter defendants and others from similar conduct in the future.

7. Award plaintiff her costs of suit and reasonable attorney fees, costs and expert witness fees on each of plaintiff's claims for relief.

8. Order defendants to pay prejudgment and post-judgment interest on all amounts due to plaintiff as a result of this action, with interest at the prevailing state or federal rate.

9. Order such further or alternative relief in favor of plaintiff as the court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all questions of fact or combined questions of law and fact raised by this complaint.

Crispin Hannon Marton Cambreleng LLC

By:   s/David M. Hannon
David M. Hannon, OSB No. 045666